DOCK BISHOP *v.* STATE OF MISSISSIPPI.

**Criminal Law — Trials — Application for Continuance — Evidence.**
>Defendant will not be granted a continuance where he has not exercised due diligence in procuring the attendance of his witnesses by whom he expects to prove facts **material to his** defense.[1]
>Same. Neither will he be entitled to a continuance on such grounds where the facts to be testified to by such absent witnesses were proven by other witnesses.

James Bishop, Dock Bishop, and Robert Lamar were jointly indicted for murdering one Wise.   There was a severance, and Dock Bishop was tried, convicted, and sentenced to death; whereupon he appealed to the Supreme Court.

---

[1]

The granting or refusing a continuance is peculiarly within the discretion of the court, and cannot be re-examined in the appellate court.   Noe's case, 4 How. 330; Muirhead *v.* Muirhead, 6 S. & M. 451.

The exercise of this discretion cannot generally be assigned for error.   Bohr *v.* Steamboat Baton Rouge, 7 S. & M. 715.

A continuance is allowed for the absence of a witness only where the proper steps have been taken to procure his attendance.   Week's Case, 31 Miss. 490.

And if the court were to commit an error on the showing then made, in refusing a continuance, it will be cured by the subsequent appearance of the witness in time to testify on the trial.   Week's Case, 31 Miss. 490.

There was much testimony in the trial court, and many errors were assigned by appellant, but it will be sufficient to a proper understanding of the case to consider only those touched upon by the reviewing court.

Application was made by defendant in the trial court for a continuance, and in support of this application the following showing was made:

Dock Bishop being duly sworn deposed that he could not safely go to trial at that term of court on account of absent witnesses, who were material to his defense, to-wit: a man whose name was unknown to defendant, but known to C. E. Butler of Oxford, Miss., and the town authorities of Bolivar, Tenn., who told said authorities and the said Butler that one Evans Ford told him (said witness) that he (Ford) and others, whose names were not remembered by said witness (but who were neither of defendants), killed Wise in Calhoun county, Miss., and detailed to Butler the circumstances of such killing and told Butler that the watch taken from the dead body of Wise was then (only a few weeks prior to trial day), at the time he was talking to said Butler, in possession of a person at Mrs. Smith's, near and west of Holly Springs, Miss., and near the new railroad there; and that defendant expected to prove by said witness the truth of the statements made by him to the said Butler; that said witness had not been subpœnaed because he was temporarily beyond the jurisdiction of the court; but that defendant was informed that he resided in Mississippi, and that compulsory process would procure his attendance at the next term of the court; that defendant had had no opportunity to have such compulsory process, and that defendant knew of no other witness by whom he could prove the same facts; and that he expected to have said witness in attendance at the next term of court; that by John A. Mathews,

---

The application was based on the absence of a witness, who was desired only for the purpose of impeaching a witness for the State, by proving that the State's witness had said that if he could not convict the accused by telling the truth, he would do it otherwise. *Held,* that a continuance was properly refused. Lundy's Case, 44 Miss. 669.

The granting and refusing of a continuance is within the discretion of the court and cannot be assigned as error. Appellate tribunals interfere with the exercise of this discretion with extreme reluctance and caution, and only when a palpable error has been committed, without the correction of which, manifest injustice would be wrought. Noe's Case, 4 How. 330; McDaniel's Case, 8 S. & M. 401; Lundy's Case, 44 Miss. 669 (citing Ogle's Case, 33 Miss. 383).

who had been duly subpœnaed, he expected to prove that said Mathews had the deceased staying at his (Mathews') house, and that he and Mathews were concocting a scheme to entrap and arrest Dock Bishop and Bob Lamar; that Wise was at Mathews' house a few minutes before the killing, and that Jim Bishop, codefendant, was on friendly terms with Wise, and that he (Jim Bishop) went·in advance of Wise without any gun or any weapon by which such wound could have been inflicted on the person of deceased as was inflicted; that Mathews and this defendant were personally hostile to each other and had been enemies ever since a period long before the killing of Wise; that by Joe Lafayette, Alice Lafayette, and Asa Fleming they saw Jim Bishop immediately after the killing and heard all he said, and heard the reports of the guns and pistols in the direction of the place where the killing occurred; and that the acts, declarations, and conduct of Jim Bishop were inconsistent with his guilt and in no wise inculpated this defendant; that no one was with Jim Bishop when he came to their home; that they saw Jim Bishop at their home less than two minutes after the firing; that the distance was too great for him to have traveled within the time from the sound of the firing until his arrival at their house. By Joe Jones that he was at the scene of the killing shortly thereafter, and at the grave at, and immediately preceding the disinterment of the dead body of deceased, and that he saw and heard things which defendant was informed and believed were material to his defense;

An affidavit for a continuance, on the ground of absence of witnesses, should show diligence in procuring their attendance, and an expectation that their attendance will be procured at the next term. Noe's Case, 4 How. 330.

In this State, by statute, upon every application for a continuance, the applicant must state in his affidavit the facts which he expects to prove by his absent witnesses, in order that the court may judge of the materiality of the facts to the issue in the cause; and the statute applies alike to criminal and ·civil cases. McDaniel's Case, 8 S. & M. 401; Code of 1857, p. 503, art. 151; Code of 1871, § 633.

To entitle accused to a continuance because of the absence of a witness, he ·should promptly have the witness summoned, and ask for an attachment if he fails to appear; must, if the case be capital, apply for a continuance before the special venire is drawn; must set out in his affidavit the name and resi-,dence of the witness and the facts expected to be shown by him, and also show ·what steps have been taken to secure his attendance; must negative the idea that he is absent with his consent or procurement, and state the cause of such absence if known. If the continuance be refused, he must sue out the proper process for the witness, and, when the case is called for trial, must again

that defendant did not know what his (Jones') testimony was, or would be, as he had had no chance to confer with him; that defendant was informed that May and J. C. Hollingsworth knew something material to his defense, but that he did not know what that might be, and that he had only recently heard of it, and that he had had no opportunity of conferring with such parties; that by John Lamar that he (defendant) voluntarily surrendered himself and went into the custody of the jailer of Lafayette county with full knowledge of the fact that defendant was accused of killing Wise; that by A. E. Peden and Ed Smith, the testimony of State's witnesses before the coroner's inquest did not, in any way, inculpate the defendant, and that such testimony was contradictory to the testimony attempted now to be given by the same witnesses, and that such witnesses were among the most important of the State's witnesses; that defendant had been in close confinement ever since indictment found; that he was innocent as to the crime charged against him, and that he had been at a great loss to know the kind of testimony that would be adduced against him; that he and counsel had endeavored to see the testimony taken in writing at the coroner's inquest; and that failing to find it at Pittsboro (the county seat), where it ought to be, that he had subpœna *duces tecum* issued for A. E. Peden and Ed Smith to come into court and bring such testimony; and that compulsory process would procure their attendance, and that of all the other witnesses, and that defendant had had no oppor-

---

apply for a continuance, making such changes in his affidavit as the conditions then require; if it is still refused, he should persist in using process to compel the attendance of the witness on the trial, and on the hearing of a motion for a new trial. If the witness cannot be had, his *ex parte* affidavit, if obtainable, must be presented on a motion for a new trial. If this is not done, he cannot complain on appeal. Lamar *v.* State, 63 Miss. 265; Lea *v.* State, 64 Miss. 294, 1 So. 244.

It is proper to refuse a continuance because of the absence of a witness, unless the facts proposed to be proved by him are pertinent and material. Sellars *v.* Kelly, 45 Miss. 323.

It is not error, even in a capital case, to refuse a continuance because of an absent witness, where no sufficient efforts to procure his attendance have been made. Thomas *v.* State, 61 Miss. 60.

Hence, where a defendant has negligently omitted to ask a subpœna for a codefendant in time for service before the trial day, a continuance because of his absence is rightly refused. Gibson *v.* State, 59 Miss. 341.

And it is not an abuse of discretion to refuse a continuance because of the absence of a witness, though material, where the witness has never been

tunity of having such compulsory process issued; that none of the said witnesses were absent by the procurement or consent of defendant or any one for him; that he had process and subpœnas issued as soon as he learned of the materiality of the evidence; that all of the said witnesses resided in Mississippi; that this application for continuance was not made for delay, but that justice might be done; and that this was the first application defendant had made for a continuance.

This application was, by the court, overruled, and the defendant placed upon trial.

One Amet, a witness for the State, testified, in some respects, differently in the Circuit Court to what he did before the coroner. By consent, one of defendant's witnesses testified that Amet's reputation for truth and veracity was good.

APPEALED from Circuit Court, Calhoun county, A. T. ROANE, Judge.

Affirmed.

*Attorneys for appellant, Sullivan & Sullivan.*

*Attorney for appellee, T. M. Miller, Attorney-General.*

Brief of Sullivan & Sullivan:

\*   \*   \*   The court erred in overruling the defendant's application for a continuance. The Mississippi reports show no

summoned, and it is not stated that his attendance is expected at the next term. Insurance Co. *v.* Brown, 57 Miss. 308.

It is not error to refuse a continuance applied for because of the absence of a witness, where it is shown that he is a transient person, without business or other ties in this State, and that the applicant has no knowledge of his whereabouts, and there is no reason to believe that his testimony could be procured in future. Carberry *v.* Burns, 68 Miss. 573, 9 So. 290.

Where the record shows no attempt to obtain compulsory process except as to one witness, and as to that one it is not shown that the witness could not have been brought into court if attached, it is not an abuse of discretion to refuse a continuance on the ground of the absence of witnesses. Stewart *v.* State, 50 Miss. 587.

Where, in a murder trial, the defendant obtains a continuance, because of the absence of certain witnesses as to his character for peace, and the bad character for veracity of the principal witness for the State, the places of residence of the witnesses not being stated, and no subpœna being issued for them; and afterward, on a change of venue, the defendant moves for a continuance upon the same showing, the witnesses being still not subpœnaed, and

instance, so far as I know, in which a case has been reversed for failure of the court below to grant a continuance. We think this case should begin the exception.

A great and dastardly crime had been committed. The circumstances were such that public *suspicion* naturally (whether justly or not) attached to defendant. Suspicion is always unfavorable to free inquiry, fair investigation, and impartial judgment. * * *

Defendant was sick, too sick to be tried. It was practically a denial of a fair and impartial trial of defendant to force him to be tried for his life when he was in a condition physically and mentally which rendered him unable to aid his counsel in the examination of witnesses and the proper preparation of the case. Defendant swore that was his condition.

The State introduced three physicians, Drs. Buchanan, Baker, and Dorroh, who examined defendant and two of them, Drs. Baker and Dorroh, testified that defendant was too sick to be tried. Dr. Buchanan *alone* thought he was not too sick to be tried, but even Dr. Buchanan said he did not know what is required for a man to be well enough to be tried. All testified that defendant was sick. There was no other testimony on this point. We have yet to learn that law and medicine are so necessarily connected that the mere external glance of the judge is a better evidence in a capital case of the mental and physical condition of a prisoner than the sworn testimony of medical physicians and

it not being averred that there were no other persons by whom the facts could be proved, the action of the court in overruling the application will be held correct. Smith *v.* State, 58 Miss. 867.

Unless it be shown that discretion has been abused, a judgment will not be reversed because of the action of the court in disposing of an application for a continuance. Insurance Co. *v.* Green, 52 Miss. 332; Solomon *v.* State, 71 Miss. 567, 14 So. 461.

Where, in a murder case, an application for a continuance is made on the ground of the absence of witnesses, by whom the accused states he expects to prove an alibi, and because of the excitement against him in an adjoining county witnesses were deterred from appearing to testify in his favor, but he admits that there are several persons present by whom he can prove the alibi, and on the trial eight or nine witnesses testify to the same, there is no error in refusing a continuance. Nelms *v.* State, 58 Miss. 362.

An application for a continuance based on the physical or mental condition of accused is addressed to the discretion of the trial court. Lipscomb *v.* State, 76 Miss. 223; 25 So. 158.

experts after examination, so that the arbitrary opinion of the judge should outweigh the sworn statements of the defendant and doctors.

Defendant had two counsel, Sullivan & Sullivan. W. V. Sullivan was entirely kept away from court on account of severe illness. The other counsel, H. M. Sullivan, was detained by subpœna from the Mississippi Legislature as a witness about the State university. Appointed counsel, of course, had no time to prepare in such a case. The case was set for a day so late it was impossible to try it during the term. Why try Bishop, sick, and under all these circumstances, and not try Lamar when he was well and ready and clamoring for a trial. *  *  *

The court would not allow N. E. McKenzie to tell the curious tales Ed Amet told the coroner's jury. But the court allowed the State to *bolster up* the witness Amet by allowing the district attorney to formulate Amet's latest speech criminating defendant, and repeat it to Elias Knight, Dr. Wait, and others, and ask if Amet did not tell the grand jury that. Is that proper?

The court further allowed the witness Amet to be *bolstered up* by permitting W. L. Harelson, a stranger to Amet, to testify that whilst he knew nothing of Amet's general reputation for truth and veracity in the neighborhood in which Amet lived, yet he, witness, was permitted to testify, it is good so far as I know, I have never heard it assailed. I have only known him since the Wise murder and I live here in town. *  *  *

An accused is not entitled to a continuance as for physical and mental incapacity simply because his physician testifies to that effect. Lipscomb *v.* State, 76 Miss. 223, 25 So. 158.

A motion in a criminal case for a continuance to procure absent witnesses cannot be granted where the evidence of such witnesses would be cumulative. Wells *v.* State, 18 So. 117.

A motion for continuance on account of the absence of a witness was properly denied when defendant did not ask for compulsory process to constrain the appearance of the witness, who had been subpœnaed, and did not ask a continuance until such process could be executed. Cannon *v.* State, 75 Miss. 364, 22 So. 827.

Accused had process issued for witnesses within easy reach, which had not been returned, although ample time had elapsed, when he was called for trial; and upon this ground he applied for a continuance, averring his ability to prove by these witnesses what would have been a complete defense. *Held*, that a refusal of the continuance was error. Williams *v.* State, 23 So. 547.

Under Code 1892, § 1425, regulating the subject, where a defendant in a criminal case had not had opportunity to obtain compulsory process for a

The court erred in granting the charge for the State No. 1. If, by it, it was intended to tell the jury that there is no difference between circumstantial and direct evidence as to the care and caution in applying it, then this is error. Algheri *v.* State, 25 Miss. —; Josephine *v.* State, 39 Miss. —. * * *

The distinction between direct and circumstantial evidence as to its force and its application is universally recognized. Starkie, Evidence, 865. * * *

The first charge given for the State is in conflict with charge No. 3 for defendant and No. 7 for defendants. Cunningham's Case, 56 Miss. 269; 55 Miss. 476; Archer *v.* Sinclair, 49 Miss. 343; 24 Iowa, 582; 20 Ohio St. 223.

The second instruction for the State is erroneous in two respects.

First, the words " beyond every reasonable doubt arising out of the evidence " or similar words should follow the words " to a moral certainty." * * *

The charges asked by defendant and refused by the court, numbered 1, 2, and 3, should have been given. One and 3 are almost literal copies of Starkie's Evidence and are applicable to the evidence. See the alleged extrajudicial statement of defendant detailed in Ed Amet's and H. C. Lamar's testimony. * * *

The court fatally erred in giving for the State the following charge:

"Although the jury may believe from the evidence that Amet was before the grand jury and there testified to facts within his

witness on account of whose absence he desired a continuance, and the facts which he expected to prove by him were material to the defense, and such process would probably have procured his presence, it was error not to have continued the case, or postponed it to another day, although the prosecuting attorney admitted that the witness, if present, would have testified as shown in the affidavit. Montgomery *v.* State, 85 Miss. 330, 37 So. 835.

Where a witness, on account of whose absence a continuance in a criminal case was asked, was shown by the record to have been duly subpœnaed, and to live a short distance from the courthouse, and to be too sick to attend the trial, and these facts were not contested by the State, and the testimony of the witness was material, the trial should have been postponed until the attendance of the witness could have been procured, although the prosecuting attorney admitted that the witness, if present, would testify as stated in the application. Caldwell *v.* State, 85 Miss. 383, 37 So. 816.

On prosecution for murder, the accused moved for a continuance because of the absence of a material witness, whose name he had just learned the day of the trial. *Held,* that the application for a continuance should have been granted. Whit *v.* State, 85 Miss. 208, 37 So. 809.

knowledge, and afterward when the defendants had all been arrested and were in custody, Amet told Mrs. Lamar, Elias Knight, and others of the facts within his knowledge and further stated to them that he had made such statements to the grand jury. Such statements alone do not necessarily destroy the credibility of the witness."

This instruction is subject to many objections. First it points out the witness Amet by name. This is error. 56 Miss. 791.
\*   \*   \*

This is a direct charge both upon the weight and credibility of the evidence and this is error and prejudicial error for the whole case. Defendant's life depends upon the weight and credibility of Ed Amet's testimony. Without his testimony there is no case against defendant whatever. The jury are the exclusive judges of the evidence, both as to its weight and credibility. Ned & Taylor v. State, 33 Miss. 364; George v. State, 39 Miss. 570.
\*   \*   \*

If the jury were informed that the statements contained in that charge did not destroy the credibility of Ed Amet, then the jury might well consider whether they had a right to consider that any of the other evidence or all of it destroyed Amet's testimony, and to be in doubt whether or not they or the court were the judge of the credibility of the evidence or its weight.   \*   \*   \*

Brief of T. M. Miller, Attorney-General:

\*   \*   \*   The case was continued once on the application of defendant. There was no error in refusing the last continuance applied for over a year after the finding of the indictment. As defendant failed to bring himself within any of the requirements of the rule on that subject, so clearly laid down in the case of Lamar v. State, I shall not further discuss the matter of the refusal of the last continuance.   \*   \*   \*

So far as the sickness of defendant or his counsel are concerned, it is proper to say that the testimony touching the former satisfied the court (before whose eyes sat the accused) that he was well enough for all practical purposes. The ground of illness was the last thing reserved. The record shows abundantly that there was nothing in the defendant's physical condition that impaired his capacity for making such a defense as he desired and intended to make. Bishop had abundant counsel, and the record will show that their energy could not have been surpassed.   \*   \*   \*

The instructions were unexceptionable in my judgment and require no argument.    *    *    *

I may safely submit the case, merely requesting the court to glance over the testimony.

Even without Amet's evidence, there would have been sufficient to justify the jury in rendering a verdict of guilty; but, with Amet's, every shadow of doubt is removed. The attempt to break him down was a failure because, few persons situated as he was, the threat of these desperadoes hanging over him, would have dared to disclose the truth any sooner than he did.

OPINION.— ARNOLD, J., delivered the opinion of the court:

A careful examination of the record disclosed no error for which the judgment should be disturbed. The errors assigned are numerous, but the most of them are so plainly without merit that they do not require or admit of discussion.

The action of the court in refusing the application for continuance is vindicated on either of the grounds, that the appellant did not show proper diligence in procuring the attendance of his witnesses, or that the material facts which he alleged he expected to prove by absent witnesses were put in evidence by other witnesses in his behalf. If it be admitted that the *contrariant* statements made by the State witness Amet did not authorize the admission of testimony on the part of the State, as to his general reputation for truth and veracity, it affords no just ground of complaint for appellant, for the reason that by consent, and without objection, one of his own witnesses testified that Amet's reputation for truth and veracity was good, and what the witnesses for the State afterward said on that subject was merely cumulative. Amet's reputation, in the absence of proof to the contrary, was presumed to be good, and was proved to be good, without reference to the State witnesses on that point.

We are of opinion that instructions given fairly announced the law applicable to the facts of the case, and that the instructions asked by appellant and refused were properly refused, and that the verdict was warranted by the evidence.

*Affirmed.*